**Not for Publication**

**United States District Court
for the District of New Jersey**

CHARLES CONNORS,

                         Plaintiff,

         v.                                                    Civil No.: 09-0165 (KSH)

JOHN HOCHBERG,

                         Defendant.                           **Opinion**

**Katharine S. Hayden, U.S.D.J.**

        Pro se plaintiff Charles Connors, a prisoner currently incarcerated in the New

Jersey State Prison, filed a civil rights suit alleging mistreatment during a medical

examination.  The sole remaining defendant, Dr. John Hochberg, now moves to dismiss

the complaint or, in the alternative, for summary judgment.  [D.E. 75.]  The Court will

grant the motion for summary judgment.

I.

        A single claim of sexual abuse against Hochberg, sounding under the Eighth

Amendment and raised pursuant to 42 U.S.C. § 1983, remains from the original

complaint [D.E. 1].  As developed over the course of this litigation, Connors alleges that

on December 5, 2008, while incarcerated at Northern State Prison, he[1] was "seen by

---

[1] Connors self-identifies as a pre-operative transgender individual, and the Court notes a
general avoidance of the use of first-person pronouns in the papers filed, although

[Hochberg] for examination," during which Hochberg "sexual[ly] abuse[d]" him. (Aug. 31, 2011 Narrative Statement 1 [D.E. 52].) Specifically, Connors went to sick call on that day for a rectal-pain and bleeding follow-up examination, and Hochberg said that he would be performing the exam. (Connors Cert. ¶¶ 1–2 [D.E. 82].) Connors states that during the exam, Hochberg "rammed his fingers into" Connors's rectum without the use of lubricant or medical gloves. When Connors reacted, "[Hochberg's] response was to [say] stop the drama queen shit you have had wors[e] done to your ass, it don't hurt that bad." (Connors Cert. ¶ 5, Connors SMF ¶ 9 [D.E. 82-1].) Connors claims that on hearing the commotion, corrections officer and non-party Kenneth Mylnarz "stuck his head into the room and asked if everything was alright." (Connors Cert. ¶ 7.) Connors yelled, "This man has lost his mind." (Connors Cert. ¶ 8.) He alleges that a digital exam was not even necessary (Connors SMF ¶ 12–13) and that Mylnarz had acted inappropriately in the past (Narrative Statement 5).

Hochberg's version of events is very different. Within a narrative statement of facts incorporated into the Final Pretrial Order, Hochberg says that he saw Connors on December 5 for a complaint of rectal pain. Because of Connors's history of antagonism with other doctors at the prison, Hochberg states that he requested a corrections officer, Mylnarz, to be present during the exam. Hochberg took "samples for [guaiac] cards[] to

---

Connors does use "Mr." on his envelopes. Consistent with its prior opinion, the Court refers to Connors using masculine pronouns in this opinion.

detect the presence of occult blood in the stool" and "observed internal and external hemorrhoids[] with no prolapse and no thrombosis," noting also that Connors "was tender." The diagnosis was "internal hemorrhoids without complication." However, "the minute" Hochberg actually "touched him," Connors "yelled rape and starting shouting and acting belligerent," at which point Hochberg "immediately ceased his exam and excused himself from the room." (*See* Aug. 4, 2011 Narrative Statement [D.E. 48].)

During the course of the litigation, Connors began to refer to his difficulty in prosecuting the case due to frequent transfers and lack of access to his legal material. (*See, e.g.*, July 29, 2011 Letter [D.E. 47].) In a letter to then-Magistrate Judge Shwartz, he wrote that he was "confined to a lock down." (*See* Aug. 9, 2011 Letter [D.E. 49].) This Court appointed pro bono counsel Massimo D'Angelo for the specific purpose of investigating the effect of Connors's administrative segregation on his ability to pursue the case. (*See* Nov. 4, 2011 Order [D.E. 56].) D'Angelo described Connors as without meaningful "resources or assistance" while in administrative segregation; further, "nearly all of [Connors's] legal documents" disappeared during one of the transfers. (*See* Dec. 8, 2011 Letter [D.E. 61].) Because "[n]o attorney, let alone a pro se party, could diligently and competently prepare an argument in opposition to a motion for summary judgment under these circumstances," the Court stayed the case pending Connors's release from administrative segregation. (Dec. 12, 2011 Op. & Order [D.E. 62].)

After Connors was released from segregation, Hochberg filed the present motion

for summary judgment [D.E. 75], attaching Connors's medical records (including a report from the December 5 examination) and an affidavit from Mylnarz corroborating Hochberg's version of events.[2]  Connors opposes with his own affidavit [D.E. 82]; a statement from William Pringle, who was his cellmate at the time of the incident [D.E. 83], and to which Hochberg objects on grounds of admissibility; and a supplemental narrative statement [D.E. 84] submitted in response to an order of the Court [D.E. 80] respecting the form of his opposition.  Although Connors originally alleged in his complaint that the incident happened on or around December 8, not December 5, he had used the December 5 date in his narrative statement incorporated into the Final Pretrial Order (*see* Aug. 31, 2011 Narrative Statement 1).  In opposing Hochberg's motion, he returns to the December 8 date, and contends that Hochberg has improperly failed to provide medical records from December 8.  (Connors SMF ¶ 1.)

The parties supplemented their briefing with materials pertaining to Connors's exhaustion of administrative remedies.  Hochberg provided a certification from James Dutch of the New Jersey Department of Corrections, who attested that Connors had "never filed an administrative appeal" [D.E. 88-1], and a 2007 New Jersey State Prison inmate's handbook [D.E. 88-2].  Connors provided two inmate remedy system forms, one

---

[2] Although captioned a motion for summary judgment under Fed. R. Civ. P. 56, both the moving brief and Hochberg's reply seek dismissal under Fed. R. Civ. P. 12(b)(6) as well. As the Court has already determined that the complaint stated an Eighth Amendment claim, reconsideration of the earlier dismissal ruling on the same basis is unwarranted. This opinion will treat Hochberg's motion as requesting summary judgment only.

dating from December 15, 2008, and the other dating from January 8, 2009.  [D.E. 89.]

## II.

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.  Because Connors is pro se, his submissions are to be construed liberally.  *Henderson v. Fisher*, 631 F.2d 1115, 1117 (3d Cir. 1980) (per curiam).

A motion for summary judgment under Fed. R. Civ. P. 56 is to be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010) (citation omitted).  In ruling on the motion, the Court interprets the evidence in the light most favorable to the non-movant while drawing all justifiable inferences in his favor.  *Beers-Capitol v. Whetzel*, 256 F.3d 120, 130 n.6 (3d Cir. 2001).  "At the summary judgment stage, the judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial."  *Id.*  "However, the non-moving party must present more than a mere scintilla of evidence . . . ."  *Jakimas v. Hoffmann-LaRoche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007).

Prisoners have a clearly established right "not to be sexually abused by a state employee while in confinement."  *Whetzel*, 256 F.3d at 142 n.15.  Sexual abuse, as well as the medical mistreatment of a prisoner, *see Spruill v. Gillis*, 372 F.3d 218, 237 (3d Cir.

2004), can violate the Eighth Amendment's prohibition on cruel and unusual punishment. In order to be culpable under the Eighth Amendment, "a prison official must have a 'sufficiently culpable state of mind.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The culpability required is deliberate indifference to inmate health and safety. *Whetzel*, 256 F.3d at 125. "Where no legitimate law enforcement or penological purpose can be inferred from the defendant's alleged conduct, the abuse itself may, in some circumstances, be sufficient evidence of a culpable state of mind." *Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997).

III.

A) <u>Exhaustion of Remedies</u>

The Prison Litigation Reform Act (PLRA) requires inmates to exhaust all available administrative remedies before filing a lawsuit "with respect to prison conditions." 42 U.S.C. § 1997e(a). The phrase "prison conditions" sweeps broadly, covering all "suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion must be complete at the time the inmate files suit, and cannot be completed after the commencement of the action. *See Johnson v. Jones*, 340 F.3d 624, 627–28 (8th Cir. 2003) (collecting cases); *see also Banks v. Roberts*, 251 F. App'x 774, 776 (3d Cir. 2007) (nonprecedential per curiam) (citing *Johnson*); *Ahmed v. Dragovich*, 297 F.3d 201, 209 7 n.9 (3d Cir. 2002) (collecting cases).

The New Jersey Administrative Code establishes the "inmate remedy system" governing those incarcerated in New Jersey state prisons.  *See generally* N.J.A.C. § 10A:1-4.1 to 9.  It is a two-step system, consisting of an initial "routine inmate request" or "interview request," followed by (if applicable) an administrative appeal, and both stages must be "utilized and fully exhausted prior to an inmate filing any legal action." N.J.A.C. § 10A:1-4.4(b)–(d).  Step one is exhausted when the inmate submits his initial request.  N.J.A.C. § 10A:1-4.5(d).  Complaints or inquiries requiring further deliberation may be referred to "another entity."  N.J.A.C. § 10A:1-4.4.  And while staff "shall review and respond" within 30 calendar days, inquiries requiring further deliberation can take longer.  N.J.A.C. § 10A:1-4.5(e).  Administrative appeals must be submitted "within 10 calendar days from the issuance of the decision or finding of the correctional facility staff member to the 'Routine Inmate Request' or 'Interview Request.'"  N.J.A.C. § 10A:1-4.6(b).

The narrative set forth in Connors's complaint revealed that he was unlikely to have fully exhausted his remedies prior to filing suit.  *See Ray v. Kertes*, 285 F.3d 287, 296 (3d Cir. 2002) (affirmative defenses may be raised *sua sponte* if evident from the face of the complaint).  Connors represented that he "wrote numerous remed[ies]" to the administrator, "wrote [the] medical director" about the abuse, and asked "for a specialist to check damages," receiving no response.  (Compl. §§ 4b, 5.)  Further, although the complaint itself was dated January 9, 2009, it was received by the Clerk's Office on

7

January 8, and the envelope in which it was sent was postmarked January 5.[3]  Under the

prisoner mailbox rule, the filing date of the complaint would be January 5 at the latest.

*See Bond v. VisionQuest*, 410 F. App'x 510, 514 (3d Cir. 2011) (nonprecedential)

(discussing the extension of the mailbox rule to pro se prisoner complaints).  A filing date

less than a month removed from the complained-of conduct is a strong indication that

remedies have not been exhausted.  *See, e.g.*, *Rowann v. Coleman*, 481 F. App'x 44, 46

n.3 (3d Cir. 2012) (nonprecedential per curiam) (affirming *sua sponte* dismissal of a

complaint where the filing date was "mere days after the complained-of incident"); *Toney*

*v. Bledsoe*, 427 F. App'x 74, 77–78 (3d Cir. 2011) (nonprecedential per curiam) ("At the

time of filing, less than a month had passed since the complained-of incident, and he had

just begun pursuing his administrative remedies.").

It is clear from the record that Connors was still awaiting a response at the time he

filed suit.  The grievance form he submitted on December 15, 2008 was forwarded to the

Special Investigations Division on December 18 "[b]ecause of the seriousness of th[e]

allegation."  (Dec. 15 Grievance [D.E. 89].)  Assuming that this action fully exhausted

step one of the grievance process, both the complaint and the interview request Connors

filed on January 8 reveal that he had not heard back from SID or other prison officials at

the time he filed his complaint.  Further, Connors never filed an administrative appeal of

---

[3] The postmark is not clearly reproduced in the scanned copy on the docket.  The Court
has referred to the original envelope in the Clerk's Office in making this determination.

any of his inmate requests or grievances.  (Dutch Cert. ¶ 4–5.)[4]  It is possible, albeit unlikely, that an eventual response could have granted Connors all of the relief available from the grievance system, potentially obviating his need to further exhaust via appeal before seeking money damages from the courts.  *Cf. Booth v. Churner*, 532 U.S. 731, 741 (2001) (requiring exhaustion of remedies even when money damages are unavailable within grievance system).  But under any possible scenario—that Connors was required to appeal, but did not do so, or that he was not required to appeal because of a favorable result—he had not yet obtained a resolution on his grievance when he filed suit.[5] Connors has not met his burden in going "beyond the pleadings," *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986), to show a genuine issue regarding his exhaustion of remedies prior to bringing suit.

District case law supports this outcome.  In *Crymes v. N.J. Dep't of Corr.*, No. 09-3277, 2011 WL 6756915 (D.N.J. Dec. 21, 2011), Judge Hillman discussed at length both

---

[4] The Court has not considered Dutch's legal conclusion about whether Connors has "failed to exhaust his administrative remedies" in deciding the motion. *See Brown v. Caterpillar Tractor Co.*, 696 F.2d 246, 256 n.21 (3d Cir. 1982) ("Although we disregard the portion of the affidavit containing legal conclusions, Dr. Romualdi's opinions about design safety are admissible . . . .").

[5] The officer who signed the grievance form should have given Connors the timeframe for an expected response. *See* N.J.A.C. § 10A:1-4.4(i)(3).

the basic grievance procedures in Northern State Prison[6] and what amounted to proper

exhaustion of those procedures.

> The process begins with proper completion of an Inmate Remedy System
> Form, including name, SBI number, institution, housing unit, and complaint
> or question. . . . An answer will follow within 30 days. . . .  If the inmate is
> unsatisfied with the answer he receives, within ten days he must submit that
> answer and complete "Part 4" of the Inmate Remedy System Form, labeled
> Inmate's Administrative Appeal Information. . . . The resultant response
> from that administrative appeal is considered a final decision at the
> correctional facility level.

*Id.* at *5 (record citations omitted).  Examining the history of administrative filings by the

incarcerated plaintiff, Judge Hillman concluded that no remedies or requests pertaining to

the case at bar had been filed or fully exhausted prior to suit.  *See id.* at *6–7.  In *Crymes*,

as here, the factual record was devoid of any suggestion that remedies had been properly

and fully exhausted before the plaintiff took his action to federal court.

Because Connors has not put his failure to exhaust administrative remedies into

material dispute, this lawsuit fails under the PLRA.  Hochberg would be entitled to a

decision in his favor for that reason alone.  Nevertheless, the Court has examined the

merits of Connors's complaint and, for the following reasons, concludes that summary

judgment is warranted on the merits as well.

---

[6] The handbook Hochberg has provided in this litigation is a "New Jersey State Prison"
inmate's handbook, referring to the actual New Jersey State Prison facility in Trenton
rather than a generic prison in the state.  The incident at bar occurred at Northern State.

B) Merits

To begin with, Connors's narrative statement nowhere indicates that the factual recitation is made under oath.  Generally, an unsworn factual statement or affidavit cannot support or oppose a motion for summary judgment.  *Yan v. Penn State Univ.*, 529 F. App'x 167, 170 (3d Cir. 2013) (nonprecedential per curiam) (citing *Fowle v. C & C Cola*, 868 F.2d 59, 67 (3d Cir. 1989)); *Pollock v. Pollock*, 154 F.3d 601, 611 n.20 (6th Cir. 1998.  However, "[u]nsworn declarations are permissible at the summary judgment stage if they conform to 28 U.S.C. § 1746's requirement that declarants state that the contents of their declarations are true, subject to penalty of perjury."  *Phillis v. Harrisburg Sch. Dist.*, 430 F. App'x 118, 122 (3d Cir. 2011) (nonprecedential); *see Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell v. Medfit Int'l, Inc.*, 982 F.2d 686, 689 (1st Cir. 1993) ("Under federal law, an unsworn statement signed under penalty of perjury may be used, in lieu of a sworn statement or affidavit, to support or oppose a motion for summary judgment."); *Pagan v. Holder*, 741 F. Supp. 2d 687, 694 n.11 (D.N.J. 2010) (Irenas, J.), *aff'd*, 430 F. App'x 170 (3d Cir. 2011).

Although Connors lays out his version of events in many of his submissions to the Court, with two notable exceptions none complies with the "unsworn declaration" requirements of § 1746.  He never swears to the truth of his developed narrative under penalty of perjury, although he is clearly aware of the general need to do so; he swears, for example, to the truth of his statements contained in his August 6, 2013 certificate of

11

service upon the Court and his adversaries.  [D.E. 84.]  Courts in this District have (as they should) afforded pro se litigants extra leeway in the exact language employed in a § 1746 statement—finding "the above statement is true and correct" to suffice, to cite one example.  *See, e.g.*, *Duran v. Merline*, 923 F. Supp. 2d 702, 715 n.8 (D.N.J. 2013) (Bumb, J.).  Here, however, there is no language to view in Connors's favor.  Under the jurisprudence of this Circuit and District, Connors's unsworn and uncertified statements cannot stand in opposition to the motion for summary judgment; and the limited interrogatories available in the record (reproduced legibly in D.E. 33) do not change the outcome.

There are two exceptions to this shortcoming.  The first is the complaint itself, which is signed under penalty of perjury.  (*See* Compl. 7.)  So verified, it may be presented in opposition to Hochberg's motion.  *See Ford v. Wilson*, 90 F.3d 245, 247 (7th Cir. 1996) ("By declaring under penalty of perjury that the complaint was true, and by signing it, he converted the complaint . . . into an affidavit."); *Reese v. Sparks*, 760 F.2d 64, 67 & n.3 (3d Cir. 1985) (using the verified complaint of a pro se plaintiff in opposition to summary judgment); *see also Ziegler v. Eby*, 77 F. App'x 117, 120 (3d Cir. 2003) (nonprecedential) (citing *Reese* with approval).  But demonstrating the general need to go "beyond the pleadings" at the summary judgment stage, the complaint itself contains little in the way of the factual development of Connors's later narratives.  Second, the submission by inmate Pringle *is* certified in accordance with § 1746.  While

Pringle's discussion of his history with Officer Mylnarz appears to be properly made on personal knowledge, *see* Fed. R. Civ. P. 56(c)(4), his recounting of what happened in the exam room that day is, on its face, a repetition of what Connors "complain[ed] to him" after the incident.  Plainly, Pringle did not witness the incident and his recitation of Connors's statement constitutes inadmissible hearsay as it stands.  *See Smith v. City of Allentown*, 589 F.3d 684, 693 (3d Cir. 2009) ("Hearsay statements that would be inadmissible at trial may not be considered for purposes of summary judgment.").

However, the Court notes that in filing his opposition, Connors was under an order that directed him to submit a "narrative statement."  [D.E. 80.]  The direction does not indicate the narrative statement must be sworn.  A weak argument can be made that Connors believed he did not have to provide indices of making the factual allegations under oath here or elsewhere, even though it strains belief that Connors would file a verified complaint, produce an affidavit from Pringle that is properly sworn to, and omit verifying his narrative statement.  The omission is telling.

Notwithstanding, the Court moves further into both sides' submissions, and notes that even were the overt "swearing contest" to be two against two with Connors and Pringle on one side and Hochberg and Mylnarz on the other, the record compels summary judgment in Hochberg's favor based on Connors's failure to challenge the material facts.

The record and in particular the medical notes submitted in support of Hochberg's

13

motion [D.E. 75-5] demonstrate that the events in question occurred on December 5,
notwithstanding Connors's efforts to move them to December 8 (Connors provides no
support for his claim that the examination occurred on the later date).  Connors's
narrative statement makes wholesale attacks on Hochberg's credibility as author of
medical records and accuses him of withholding discovery.  (Narrative Statement ¶ 15;
Connors SMF ¶¶ 1–2.)  But the medical notes submitted, the line items of which are
never seriously challenged, show that Connors made a request for tramadol for pain
during the night of December 4/5, supporting Hochberg's statement that on December 5
he intended to perform an examination of the rectum in connection with complaints of
bleeding and pain.  The findings indicate that Connors was suffering from external and
internal hemorrhoids, and that medicine was prescribed for the hemorrhoids.  Hochberg's
statement that, after he began the examination, Connors accused him of rape and that he
ceased the examination, is sufficiently consistent with the medical findings and the
prescription to require far more than Connors has adduced in opposition.  To the extent
that Connors's accusations about rough treatment may be credited as reflecting serious
discomfort during Hochberg's examination, the notation in the medical records, "inmate
tender," and the prescription for tramadol that is ordered in the notes reflects that
Connors may well have experienced pain; Hochberg does not deny that the examination
involved inserting his finger into the rectum.  (Hochberg Reply Br. 8 [D.E. 85].)  What
Connors has not backed up with any evidence is his claim that the pain was from abuse

14

by Hochberg rather than from the medical condition it is undisputed he was suffering from.

In his supplemental papers and in the opposition narrative, Connors attacks Hochberg's decision to have a corrections officer present during the exam, and challenges Hochberg's doing more than ordering stool samples while claiming that he, Connors, could have provided that kind of testing on his own. In both regards, Connors is challenging medical decisions and not establishing abuse, as Hochberg's papers point out. *See Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987) (neither "mere allegations of malpractice" nor "mere disagreement as to the proper medical treatment" raise "issues of constitutional import"). Further, Hochberg correctly observes that to move to trial on the basis of what Connors has presented—his narratives and Pringle's statement made on the basis of second-hand information—would sorely and improperly burden the administration of medical treatment in a prison. (Hochberg Reply Br. 8.)

In short, Hochberg has set forth a version of events backed up by unchallenged medical information that coheres with his version of events. Connors has failed to adduce evidence beyond his statements that Hochberg, without provocation and contrary to the statement of Mylnarz as eyewitness, forced himself on Connors and abusively performed a rectal exam. Pringle's affidavit [D.E. 83], only a portion of which actually relates to the incident at bar, is less a corroboration of Connors's narrative than it is an

15

attack on the character of non-party Mylnarz; for example, it attributes to Mylnarz a racial slur that Connors never mentions.

The Court thus concludes that Connors fails to provide adequate proofs to demonstrate to the Court that there is a genuine issue of material fact that would defeat summary judgment. Even if Connors's materials were properly sworn and not based on hearsay, his evidence is not the "more than a scintilla" proffer that would allow a jury to return a verdict in his favor. *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001) (citations omitted).

IV.

Hochberg's motion is granted and the Clerk is directed to close this case. An appropriate order will be entered.

March 31, 2014                               /s/ Katharine S. Hayden
                                             Katharine S. Hayden, U.S.D.J.

16